CITY OF ATLANTA *v.* SCREWS *et al.*

No. 14162.   JULY 14, 1942.

*J. C. Savage, E. L. Sterne, J. C. Murphy,* and *Frank A. Hooper Jr.,* for plaintiff in error.

*Hamilton Douglas, Fine & Hendrix, F. Lee Evans,* and *Alton T. Milam,* contra.

REID, Chief Justice. The general rule as to allowance of counsel fees out of a fund in court, for distribution as the result of such counsel's efforts, is stated in the annotation in 49 A. L. R. 1145, 1150, to the case of Hempstead *v.* Meadville School, 286 Pa. 493 (134 Atl. 103), as follows: "The rule is that a court of equity,

or a court in the exercise of equitable jurisdiction, will, in its discretion, order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court a fund in which others may share with him." Trustees of Improvement Fund *v. Greenough*, 105 U. S. 527 (26 L. ed. 1157) ; 7 C. J. S. 1096, § 193b (1). There is found in the A. L. R. annotation, supra, extensive citation of cases applying the rule to different situations. It has been recognized and applied in Georgia. *Price* v. *Cutts,* 29 *Ga.* 142 (74 Am. D. 52). In other cases the rule has been recognized, but held not to be applicable. *Waters* v. *Greenway,* 17 *Ga.* 592; *Mitchell* v. *Atkins,* 71 *Ga.* 680; *Carey* v. *Hardy,* 30 *Ga. App.* 102 (117 S. E. 118) ; *Eckford* v. *Atlanta,* 173 *Ga.* 650, 652 (2) (160 S. E. 773) ; *Christian Women's Benevolent Association* v. *Atlanta Trust Co.,* 182 *Ga.* 576 (183 S. E. 551). It is contended that it is applicable to the present case. This rule rests upon the ground that where one litigant has borne the burden of litigation which others did not undertake, but which has inured to their benefit as well as his own, those who share in the benefits or fruits of his efforts should ratably share the expense. Upon this premise it is a sound rule. It represents one of those instances in the law, not so rare as sometimes thought, where the simple principle of "doing right" is observed. But our object now is to see if it applies in the circumstances before us. The plaintiff in the mandamus action sued "as a citizen and taxpayer." His right to do so was predicated on the idea that he "had an interest," since if the city allowed water to be gratuitously supplied to the Fair Association the amount he and other citizens and taxpayers would be required to pay would be more. *Screws* v. *Atlanta,* 189 *Ga.* 839, 843 (supra) ; Code, § 64-104; *Blake* v. *Macon,* 53 *Ga.* 172; *Keen* v. *Waycross,* 101 *Ga.* 588 (3) (29 S. E. 42) ; *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795 (36 S. E. 247) ; *Board of Commissioners of Manchester* v. *Montgomery,* 170 *Ga.* 361 (153 S. E. 34). This right which he asserted in bringing the suit was one common to all citizens and taxpayers. By his suit itself he did not create, or produce, or bring into court any fund. The immediate and

technical effect of his suit was the granting of a judgment of mandamus absolute. The effect of this judgment was to compel the city officials "to take action" to collect an amount which had all the time, before and after his suit, been due to the city. Neither he nor the other citizens had or ever acquired any direct interest in any "common fund." The "action" taken by the city officials was to make demand for payment, which when not respected was followed by the more effective threat "to cut off their water." Then the Fair Association sued to enjoin. The city through its legal department used appropriate court procedure which resulted in a money judgment against the Fair Association. The money was then paid into court. So we think in this situation it might fairly be said that as the result of machinery put in motion by him the recovery was had, and we therefore attach no special importance to the fact that he was not a party to nor did his counsel render service in the particular case in which the money judgment was rendered. His claim is for counsel fees incurred, not in this case, but in the first one.

The nearest case in point, either in this or any other jurisdiction, we have been able to find is that of *Eckford* v. *Atlanta,* supra. In that case it appeared that the charter of the City of Atlanta provided that the water rate should not be more than the rate on September 1, 1926, but that it might be increased temporarily for the purpose of meeting a deficit in the waterworks department. Certain discounts were allowed to water users under the ordinances and regulations of the city. By ordinance in 1931 these discounts were repealed, and the full rates were charged. This ordinance was not passed to meet a deficit in the waterworks department. The plaintiff, a citizen, sought to enjoin operation of the ordinance of 1931, on the ground that it was void. It was enjoined, and pending a final determination of the cause a supersedeas was granted, and the discounts paid were set apart as a separate fund and kept in a separate account. After the injunction was made permanent, the city filed a petition requesting the court to release the funds and to permit distribution thereof by the city. Simultaneously the plaintiff filed an application for attorney's fees out of the funds. This court held: "Where suit was brought by a citizen, on behalf of himself and others similarly situated, for injunction against collection by a city of excessive water rates, and by interlocutory order

it was directed that a fund so collected be set apart, deposited in a separate account, and not used as revenue of the city pending the case before final order of court, and by final decree the injunction was made permanent, it was not error to deny an application by the plaintiff for an allowance of attorney's fees from the fund so set apart." In the opinion by Hines, J., the rule stated at the outset herein was recognized, and as to it the writer of the opinion stated: "2. A court of equity, however, will in its discretion order an allowance of counsel fees to a complainant who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund or common property, or who has created at his own expense, or brought into court, a fund in which others may share with him. *Price* v. *Cutts*, 29 *Ga.* 142 (74 Am. D. 52) ; Hempstead *v.* Meadville Theological School, 286 Pa. 493 (134 Atl. 103, 49 A. L. R. 1145, 1150, note 11a, and cit.)" But in division 3 it was said: "The above principle does not apply in ordinary adversary proceedings. Whitney *v.* Jersey Shore, 266 Pa. 537 (109 Atl. 767). This proceeding was brought for none of the purposes mentioned in the second ruling just stated, and for which a court of equity will allow fees to counsel for the plaintiff instituting the proceeding. The suit was not instituted for the preservation, protection, or increase of a common fund, or by a plaintiff who has created at his own expense, or brought into court, a fund in which others may share. The proceeding was brought to enjoin the collection by the city of excessive water rates, and was not brought for the purpose of bringing into court a fund which would be shared in by the plaintiff and others similarly situated. The purpose of the plaintiff was to prevent the city from collecting the discounts upon the gross water rates from city users. The judge granted an interlocutory injunction to prevent the collection of these rates. The defendants applied for a supersedeas of this judgment until the question in dispute could be settled by this court. The court granted the supersedeas upon condition that the discounts on the water bills be deposited in a separate fund and not used as a part of the revenue of the city pending the hearing, and that such fund be held subject to the order of the court. The discounts on the water bills, so ordered to be deposited in a separate account and held subject to order of the court, are in no sense a fund which the plaintiff had brought into court to be shared by himself and other water users."

In that case, as here, the party sued as a citizen and taxpayer. He sought relief which would benefit all in that class. The result of his litigation was that moneys from a charge being made by the city against all users of city water, allowed to accumulate pendente lite, were made available for distribution, not by the court in the technical sense, as in receivership, but nevertheless by the city *at the instance and by order of the court*. The court there held that neither the object nor the result of the suit was to *create,* preserve or protect "a common fund." In the present case, whatever saving to the city was made was for all in the class, but there was no fund for distribution or control by the court. The money might have been paid directly to the city instead of to the sheriff. It was a recovery belonging to the city, to be disposed of under the terms of its charter and ordinances. It is true that by virtue of the recovery the theory might be indulged that future cost of water supplied by the city or cost of government might be lessened to plaintiff and other citizens and taxpayers, but that benefit is intangible, *merely anticipated,* and is not necessarily to be measured by the *amount* of recovery. Whether the rule under consideration as to the allowance of fees should be limited to litigation involving *private* funds, such as involved in debtor-creditor and similar relationships, as distinguished from cases where the person seeking such allowance either for himself or counsel acts, professedly, for the public good as a citizen and taxpayer in an action to preserve public funds, does not seem to have been decided. There is much reason to consider that great harm (though perhaps some good) might come from extending this rule to such cases. The function of government must be carried out through officials or agents. The duty of collecting public funds is cast upon them, not on the citizen and taxpayer. While the diligence and patriotic impulse of a good citizen to see that public officials perform their duty should be commended, it is greatly doubted that every citizen who invokes process of law to save taxpayers' money should enjoy the comfort of doing so, knowing the expense of his efforts, if successful—maybe because of his early moving, will be borne by the public. Such would lessen and tend to detract from the high purposes professed by him or attributed to him. It would make of every willing person a potential taxgatherer. Some things must be done in reference to public affairs, *merely for public good.* When the act of the citizen in

such matters is deprived of that wholesome quality by his seeking payment or restoration, that general needful watch care over all in public office charged with public duty is thereby weakened, not strengthened. Then, in a case like the present, there is a further consideration. Under the charter of the City of Atlanta (Ga. Laws 1874, pp. 116-150, as amended) receipts from the operation of the city waterworks go into the general treasury of the city, subject to a deduction as provided by amendment (Ga. Laws 1937, pp. 1502-1513). These funds of the city may be paid out only under some authority of law.

No authority is cited which would authorize the city to pay to informers, solicitors, or taxpayers who, to save money for themselves and others, might take and be sustained in such legal proceedings. If such funds, although property of the public, were brought under control and administration of the court, then of course its equitable powers would be ample to provide and compensate counsel whose services might be necessary, and in our State this situation is provided for by statute. Code, §§ 55-314, 55-315; *Keating* v. *Fuller*, 151 *Ga.* 66 (105 S. E. 844); *Peppers* v. *Cauthen*, 143 *Ga.* 229 (3), 230 (84 S. E. 477); *May* v. *Chero-Cola Co.*, 168 *Ga.* 443 (148 S. E. 87); *Greyling Realty Corporation* v. *Lawson*, 179 *Ga.* 188, 192 (175 S. E. 453).

It is our view that the rule as previously applied does not embrace the situation of the intervenor in the present case, and that it should not be extended. The demurrer should have been sustained.     *Judgment reversed. All the Justices concur.*